Thomas, Appellant, *v.* Unemployment
Compensation Board of Review.

Argued November 12, 1941. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, RHODES, HIRT and KEN-
WORTHEY, JJ. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Charles I. Houston,* of *Rupprecht & Houston,* for
appellant.

*R. Carlyle Fee,* Asst. Special Deputy Attorney Gen-
eral, with him *Charles R. Davis,* Special Deputy Attor-
ney General, and *Claude T. Reno,* Attorney General, for
appellee.

OPINION BY KELLER, P. J., March 11, 1942:

This case is very similar in its facts to *Gallagher
v. Unemployment Compensation Board of Review,* 148
Pa. Superior Ct. 228, 24 A. 2d 627.

The appellant, Henry A. Thomas, on August 18,
1938, applied for a position as assistant accountant
under the Civil Service provided for in the Unemploy-
ment Compensation Law (Act of December 5, 1936,
P. L. 1937, p. 2897). In his application he stated, under
the heading EDUCATION, (1) That he had attended the
Brockwayville Public Schools for 8 years; and answered
the following questions relative to such attendance,
the answers being italicized:

"Did you Graduate? *Yes.*
Give Date of Entering. *Sept. 1897.*

Give Date of Graduating. *June 1905.*"

(2) That he had attended the Brockwayville High School for *4* years; and answered like questions as follows:

"Did you Graduate? *Yes.*

Give Date of Entering. *Sept. 1905.*

Give Date of Graduating. *June 1909.*"

On the basis of the statements in his application and his examination paper, he was placed on the eligible list, his rating being based on the following factors, in the proportions indicated: Written test, 40%; Experience and *Education,* 30%; Oral Interview, 30%; and on December 5, 1938 he was appointed an assistant accountant in the Civil Service.

On checking or verifying the statements in his application, it was learned that he had not graduated from the Brockwayville High School, and, in fact, had never attended it or any other high school.

This error or discrepancy, *inter alia,* was brought to his notice by the Director of Civil Service, by letter of June 15, 1939; to which he replied by letter dated June 21, 1939, enclosing reports of his attendance at the *Brockwayville Public Schools, Sixth* and *seventh* grades, for the school terms, 1903-4 and 1904-5.

Thereupon, on July 20, 1939, the Secretary of the Board of Review, who was also Director of Civil Service, notified him to appear for a hearing, relative to said discrepancies, before the Board of Review on July 27, 1939. To this notice, Mr. Thomas replied by letter of July 25, to which he made affidavit, in which he said, *inter alia:* "In re attendance at Brockwayville School I can give nothing of a truly definite nature other than the report cards mailed to you under date of June 21, 1939 . . . . . . The dates given were approximate and any errors found in my application were not intended to mislead or defraud. Due to illness at the time of making application I was unable to do my own

typing, had I been, these discrepancies would not have occurred."

At the hearing, during the morning session of July 27, Mr. Thomas did not appear in person, but was represented by Mr. Charles E. Reeser, business representative of a labor organization. Mr. Reeser's explanation was, "Any error is explained in this manner. Mr. Thomas was sick in bed at the time this application was made out. There was a typist made the application out and he judges that she assumed that he went through with the grade and high schools. He signed it before it was filled out and he did not check it. I present an affidavit with the intent to show he did not mean to defraud." No affidavit was attached to the record other than that affixed to his letter of July 25.

Mr. Thomas apparently overlooked the fact that in his application he had given *detailed* information as to his attendance at and graduation from *both* the Brockwayville Public Schools *and* High School.

No testimony was taken at the hearing, nor was any continuance noted, and the record shows no further *hearing* on the Thomas case, but on August 11, 1939, the Director of Civil Service notified Mr. Thomas that the scores which he had received for experience and education had been revised.

The Board of Review at that time consisted of Robert L. Myers, Jr., Chairman, and George E. Prindible and P. Stephen Stahlnecker. Mr. Myers and Mr. Prindible resigned from the board, to take effect at the close of business of August 23, 1939. They were succeeded by Henry S. Lawrence and Clarence E. Blackburn, Mr. Stahlnecker becoming Chairman.

On August 8, 1940, the board issued its order directing the removal of Mr. Thomas' name from the list of eligibles prepared by the board and certified to the Secretary of Labor and Industry, and his dismissal from employment, because of his having knowingly and intentionally made false statements relative to his

education in his application for employment.

Following this notice of dismissal, Mr. Thomas appealed to the Board of Review in its appellate capacity, which, after a hearing held August 28, 1940, at which Mr. Thomas attended and testified in his own behalf, the board on September 20, 1940 filed its decision, finding that he had made false statements in his application with respect to his education, in order to obtain employment in the Bureau of Employment and Unemployment Compensation, by which he had received credits for having attended and graduated from the Brockwayville High School, although he had never attended it or any other high school, and that said false statements and representations were made by him with full knowledge that they were false; and dismissed his appeal. The board was influenced in this action to some extent by the following circumstance referred to in its decision: "Further it was developed at the hearing that, as is customary in the case of all persons receiving Civil Service appointments, Mr. Thomas was sent a form letter by the Secretary of Labor and Industry, with a blank form enclosed, requesting him to fill it out so as to give information for the records of the Bureau as to his education and experience. This form was sent to Mr. Thomas and returned to the Bureau with a statement upon it that Mr. Thomas had attended the *Brockway High School for three years.*"

Mr. Thomas then appealed to this Court.

It having developed that a hearing had been had relative to this discrepancy before a prior Board of Review, and no minutes having been kept concerning the action, if any, of that board following said hearing, we returned the record to the board to make findings of fact as to whether the prior board at or following said hearing of July 27, 1939, had considered and passed upon the wilful or intentional character of the material misstatements or misrepresentations which it admittedly contained, and decided that they were made (1)

innocently or (2) knowingly. And we said in that connection: "And in using the term 'decided,' 'found,' or 'finding' in connection with, or as a result of, a 'hearing' ordered by the board, we mean formal action taken by the board, *as a board,* concurred in by at least two members present, and not the action of two individual members of the board, taken separately and apart from a meeting of the board. With respect to matters of sufficient importance to require a 'hearing' by the board, the action taken pursuant to such hearing, in order to be valid, must be the 'action of the board,' concurred in by at least two members (sec. 203); and it should be taken in board meeting." See *Thomas v. Unemployment Compensation Board of Review,* 144 Pa. Superior Ct. 369, 19 A. 2d 488.

Pursuant to the instructions of this Court, a hearing was had on July 24, 1941, by the board, composed of P. Stephen Stahlnecker, Chairman, and Clarence E. Blackburn and Stanley J. Davis, which was attended by Mr. Thomas and his counsel, and by Mr. Robert L. Myers, Jr., Chairman of the prior board, who testified as a witness in his behalf.

Mr. Myers testified concerning the practice in vogue in the board, while he was Chairman, respecting differences or discrepancies that were found between the statements in the applications and the replies to letters of inquiry sent out to check or verify them. "Where those differences were reconciled, the matter went no further. Where, however, there seemed to be a reconcilable [irreconcilable?] difference, or there seemed to be some indication that an erroneous or false statement had been made in the application, the whole file of the case was prepared and turned over to Mr. Jacobs by the Review Section (Mr. Jacobs was Director of Civil Service), together with a summary in concise form of the points at issue. It was our invariable practice that Mr. Jacobs would bring the files in the cases that were presented to him in this way before the Board of Re-

view. The Board of Review sat with Mr. Jacobs, and Mr. Jacobs would present to us the data shown on the summary of the case. The Board of Review would first determine from the records in the files, and from the statement that was submitted to Mr. Jacobs, whether there was a discrepancy or a marked difference between the statements and information contained in the application and the information furnished by the employers and school administrators. If we found that there was a discrepancy, the next act was to determine whether or not that discrepancy was the result of a wilful, untruthful statement made by the applicant in his application for the purpose of obtaining an unfair advantage in the evaluation of his application. If we were of the opinion that *prima facie a wilful, untrue statement had been made,* we directed Mr. Jacobs to schedule that case for hearing."

It does not appear that notice of any such practice was ever given Mr. Stahlnecker, upon his becoming a member of the board on July 12, 1939, and he averred that he was never informed or notified of any of these meetings at which a 'sifting out' process was used, for the purpose of sorting and classifying these discrepancies or misrepresentations.

The evidence developed at the hearing showed that Mr. Jacobs, the Director of Civil Service and Secretary of the board, from time to time, but on no stated days or periods, would place on Mr. Myers' desk a batch of record files, which dealt with cases where preliminary inquiries, etc., had been completed, and that Mr. Myers and Mr. Prindible would then go over these files and sift, sort or classify from them such cases as, in their opinion, required a hearing because of the prima facie wilful nature of the untrue statement. Mr. Stahlnecker testified that he never had received any notice of these 'sifting' meetings and was given no opportunity of taking part in any of them, although he was present in the building and available for such duty at all times

during working hours, every day between July 12 and August 23, 1939, inclusive.

In any event, Mr. Myers and Mr. Prindible must then have been of opinion that "prima facie, a wilful, untrue statement had been made" by Mr. Thomas, for they directed Mr. Jacobs "to schedule [his] case for hearing."

We have already referred to what occurred at that hearing as shown by the stenographic report of it.

Mr. Myers testified that following it, the board had decided that Mr. Thomas' misstatements respecting his attendance at and graduation from the Brockwayville High School had not been wilful and intentional misrepresentations and that it had directed the Secretary to inform him of the revision of his score or grade as a result of the deletion of his improper credits. Mr. Stahlnecker denied that any action was taken on the case that day; and said that no further hearing was scheduled, and no decision was arrived at in any meeting of the board of which he was notified.

The Board of Review[1] on April 16, 1941, made its findings, including, *inter alia,* the following:

"(5) At the time of the receipt of appellant's letter, of July 25, 1939, the personnel of the Unemployment Compensation Board of Review consisted of Robert L. Myers, George E. Prindible and P. Stephen Stahlnecker; Mr. Myers being Chairman, and Mr. Prindible and Mr. Stahlnecker being members of the Board. Prior thereto a time for hearing was set in 27 cases for July 27, 1939, notices of which were mailed to the various parties in interest. Among the 27 cases just mentioned, was the case of Henry A. Thomas. Appellant did not appear before the Board of Review on July 27, 1939. No other hearing was ever scheduled before the then Unemployment Compensation Board of

---

[1] Mr. Stahlnecker did not participate in the Report or Findings because of his having testified as a witness.

Review, or before any of its members, for the specific purpose of taking testimony or receiving evidence in connection with discrepancies on appellant's application, other than the one already specified. The only evidence ever submitted in any manner to the original Board, in connection with the intent and motive of the appellant in misstating the facts on his application, was the letter received by the Board of Review, and the statements made by Charles Reeser, a representative of the State, County and Municipal Employees, an affiliate of the A. F. of L. Mr. Thomas at no time appeared before the original Board, nor was he interrogated by the Board, or by any of its members, at any time, relative to the discrepancies set forth in his application regarding his educational qualifications......

"(7) ...... On July 27, 1939, the Chairman of the Board of Review, with the concurrence of one member of the Board, to-wit, George E. Prindible, advised the Director of Civil Service to revise the appellant's score based on the fact that appellant had not attended high school for the period indicated, nor graduated from a high school, as stated in his application. The Director of Civil Service, accordingly wrote the appellant on August 11, 1939," as above mentioned.

"(8) Under the practice and procedure followed by Mr. Myers, Chairman, and Mr. Prindible, member, in cases in which they had decided that false statements in applications were not made knowingly or in order to obtain employment, the Director of Civil Service was advised by the Chairman to correct the applicant's score and advise him accordingly.

"No specific finding was ever made in the Thomas case, nor was it the practice or custom to make such a finding, that the discrepancies were unintentional and not made for the purpose of obtaining employment......

"(9) One of the members of the Board of Review, Mr. P. Stephen Stahlnecker, testified.

'No decision was reached during the course of the hearing, or immediately after it in which I was a party, and I had no knowledge of any instruction issued to Mr. Jacobs in the matter until we reviewed the cases sometime later. I have no knowledge or recollection that would have any bearing on any decision reached by Mr. Myers and Mr. Prindible as a majority of the Board.' ......

"Mr. Stahlnecker was never notified by the other members of the Board as to their deliberations and determination in the Thomas case.

"Mr. Stahlnecker while a member of the Board from July [12], 1939, was not consulted by the other members in the Thomas case, and was not given an opportunity to examine the record and express his opinion as to the appellant's intent and motive in making the false statements in his application for Civil Service examination as assistant Accountant."

Under Section 510 of the Unemployment Compensation Law the findings of fact of the Board of Review, if supported by evidence, in the absence of fraud, are conclusive upon us. The findings of the board, including those above quoted, are supported by substantial, competent evidence and we are bound by them.

Under our ruling in *Gallagher v. Unemployment Compensation Board of Review,* supra, they require the conclusion that no valid action was taken by the prior board, sitting as a board, on the question of whether the misstatements of the appellant were intentionally made or not.

If no valid action was taken by the board on July 27, 1939, it was competent for the succeeding board to take subsequent action in the case on August 8, 1940.

The findings sustain the decision of the board of September 20, 1940 appealed from.

Accordingly the decision is affirmed and the appeal is dismissed.